UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-819

JANE DOE, BY AND THROUGH HER
PARENTS JANE ROE AND JOHN ROE

       Plaintiff,

vs.

AMERICAN AIRLINES GROUP, INC. and
DOES 1-10,

       Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

NOW COMES Plaintiff JANE DOE, by and through her parents Jane and John Roe, through the undersigned counsel, complaining of the Defendants, AMERICAN AIRLINES GROUP, INC. and DOES 1-10, and alleges as follows:

### INTRODUCTION

1.     Plaintiff Jane Doe—a fourteen-year-old girl—asserts claims against American Airlines, Doe 1 (a currently unidentified male American Airlines flight attendant), and other John Does based on Doe 1's surreptitious filming of Plaintiff while she used the airplane toilet during a flight that originated from Charlotte, North Carolina.  Upon information and belief, American Airlines knew or should have known the flight attendant was a danger.  Moreover, American Airlines' conduct immediately following the incident, including not immediately confiscating the flight attendant's phone and not immediately notifying the pilots, allowed the flight attendant to destroy evidence, and exacerbated the harm suffered by Plaintiff.  Plaintiff has suffered significant emotional distress and damages as a result of Defendants' conduct, for which she now seeks relief.

## JURISDICTION

2.     Jurisdiction is proper in federal court because this case arises under 28 U.S.C. 1332, which sets forth diversity jurisdiction.

3.     Defendant is a corporation headquartered in Texas, with its principal place of business there.

4.     Plaintiff is a citizen and resident of North Carolina.  Jane Roe and John Roe are Plaintiff's parents, citizens and residents of North Carolina, and acting as Jane Doe's representatives in this action.

5.     Jurisdiction is proper in the Western District of North Carolina because the flight at issue originated out of Charlotte, North Carolina.  Additionally, the vast majority of the harm Plaintiff has suffered has occurred in North Carolina.  Furthermore, Charlotte, North Carolina is a hub for American Airlines, and the airline operates the majority of the flights at the Charlotte Douglas International Airport in Charlotte, North Carolina.

## PARTIES

6.     Plaintiff is a fourteen-year-old girl and a citizen of Mecklenburg County, North Carolina.

7.     Defendant American Airlines Group, Inc. is a Delaware corporation headquartered in Tarrant County, Texas, that maintains its principal place of business in Texas.

8.     Doe 1 is a male flight attendant employed by American Airlines who was working on American Airlines flight 1441 on September 2, 2023.  His name and place of residence are presently unknown to Plaintiff.

9.     Plaintiff is unaware of the true names and capacities of the Defendants Does 1 through 10.  Plaintiff will amend this complaint to show the true names and capacities of these

Defendants when ascertained. Plaintiff is informed and believes that each of the Defendants, including each fictitiously named Defendant, is liable in some manner for the events referred to in this Complaint.

10. At all times relevant to this Complaint, Defendants, and each of them, were acting as each other's agents, and were acting within the course and scope of their agency with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint.

11. Defendants are sued herein individually and as principals, participants, and aiders and abettors in the wrongful conduct complained of and the liability of each arises from the fact that each as engaged in all or part of the improper acts, plans, conspiracies, or transactions complained of herein. The acts alleged to have been done by Defendants were authorized, ordered, or done by them and their officers, agents, employees, or representatives while actively engaged in the management of each of the Defendants' affairs.

## FACTS

12. On September 2, 2023, Plaintiff boarded American Airlines flight number 1441 to fly from her home in Charlotte, North Carolina to Boston, Massachusetts.

13. Her older brother attends school in Boston.

14. Together with her parents and younger sister, she was traveling to see her brother and to help him move into school and set up his room for the fall semester.

15. Plaintiff, her younger sister, and her parents were seated together in row 14 in economy class.

### Plaintiff Is Secretly Filmed While Using the Plane's Bathroom

16. Midway through the flight, Plaintiff rose from her seat and walked to the middle of

the plane to use one of the two restrooms located in the economy class section, closest to her seat.

17.     Both economy class bathrooms were occupied when she got there, so Plaintiff waited outside for one of them to vacate.

18.     She was first in line.

19.     While she was waiting, a male flight attendant, Doe 1, approached her and told her that she could use the bathroom located at the front of the plane, in front of the first-class seats, "because it would be faster."

20.     Plaintiff looked down the aisle of the plane and noticed that the "occupied" sign, located by the first-class bathroom, was lit, indicating that bathroom was also in use.

21.     Given that the first-class bathroom was also currently occupied, she thought it was odd that the flight attendant directed her to move to the front of the plane to use that bathroom.

22.     However, as a fourteen-year-old, she had been taught to respect adults.

23.     Additionally, given his position as a flight attendant and an authority figure, Plaintiff felt obligated to follow his directions.

24.     The flight attendant proceeded to lead Plaintiff down the aisle of the airplane to the first-class bathroom.

25.     By the time they arrived, the bathroom had been vacated and was available for use.

26.     The flight attendant, however, told Plaintiff that he needed to quickly go into the bathroom first, to wash his hands, because he said the flight crew was about to circulate the plane to pick up trash.

27.     Again, this explanation seemed peculiar to Plaintiff, given that it made more sense for him to wash hands after collecting trash, as opposed to prior to doing so.

28.     Nevertheless, the male flight attendant entered the bathroom and closed the door,

4

while Plaintiff waited.

29.   He was in the bathroom for approximately one minute.

30.   When he emerged, he told Plaintiff: "The toilet seat in there is broken.  But don't worry about it.  We're going to get it fixed when we get back to Charlotte."

31.   Plaintiff entered the bathroom and noticed that the toilet seat lid, which was raised, had red tape on the lid.  On the red tape was black handwriting that said: "SEAT BROKEN."

32.   Plaintiff turned around, locked the door, pulled down her pants, and sat on the toilet seat.

33.   After she was done using the toilet, she stood and turned around to flush the toilet.

34.   Upon doing so, she got a better look at the tape on the toilet seat and saw that, hidden underneath the tape, was a mobile phone.

35.   The camera lens of the phone and the camera flash were both visible below the bottom of the tape.  The camera flash was on.

36.   Plaintiff was shocked and scared.  It immediately occurred to her that someone had put the phone there to film her using the toilet.

37.   She had her own phone with her in the bathroom and she took a photograph of the toilet seat so that she could show her parents.

38.   This is the photograph she took:



39.     When she emerged from the bathroom, the male flight attendant was still outside, waiting for her.

40.     As soon as she exited the bathroom, he went back into the same bathroom and locked the door.

**The Flight Attendant Retains Possession of His Phone for Another Hour**

41.     Plaintiff quickly returned to her seat where she immediately showed the photograph to her mother.

42. Once Plaintiff's mother understood what had happened, she rushed to the front of the plane to warn other passengers.

43. When Plaintiff's mother reached the front of the airplane, another female passenger was just about to enter the bathroom.

44. Plaintiff's mother told the woman not to use the bathroom and explained what had happened to her daughter.

45. Plaintiff's mother looked into the bathroom that Plaintiff had used, but the phone and the tape were both gone.

46. The female first-class flight attendant noticed the commotion and asked Plaintiff's mother what was happening.

47. Plaintiff's mother explained everything to the first-class flight attendant.

48. The first-class flight attendant responded by saying: "This is very serious. I will have to tell the pilot about this."

49. Plaintiff and her mother then returned to row 14 and told Plaintiff's father what had happened.

50. Plaintiff's father looked around to find the nearest flight attendant and noticed that they were meeting in the back of the plane.

51. He immediately walked to the back of the plane where the four flight attendants were gathered – the male flight attendant who had directed Plaintiff to use the first-class bathroom, the female first-class flight attendant, and two other female flight attendants.

52. Plaintiff's father approached the group and said: "What the hell just happened in the first-class bathroom with my daughter?"

53. The other two female flight attendants looked shocked.

54.     Plaintiff's father showed them the photograph Plaintiff had taken and said: "Look at this picture.  Someone was filming my daughter in the first-class bathroom."

55.     Plaintiff's father turned to the male flight attendant, on his righthand side, and said: "You told her to go in there.  I want to see your phone."

56.     The male flight attendant's face drained of color.  He said: "I don't know what you're talking about.  I have nothing to do with this."

57.     Plaintiff's father repeated: "Show me your phone."

58.     The male flight attendant walked down the aisle toward the front of the plane, ostensibly to get his phone.

59.     In the meantime, Plaintiff's father stayed in the back of the plane, speaking to the other three, female flight attendants.

60.     The two flight attendants who had not yet seen the photograph asked to do so and Plaintiff's father obliged.

61.     Plaintiff's father realized that the male flight attendant had not yet returned from the front of the plane.

62.     Plaintiff's father looked down the aisle and saw the male flight attendant standing in the aisle at the front of the plane, tapping furiously on his phone.

63.     Plaintiff's father rushed down the aisle and grabbed the man's phone out of his hands.

64.     By the time Plaintiff's father acquired the phone, it was locked.

65.     The male flight attendant begrudgingly showed Plaintiff's father the photos on his phone, but Plaintiff's father did not see anything that looked like his daughter using the bathroom.

66.     Plaintiff's father only had a cursory look at the flight attendant's phone and was not

able to review the photos for more than a few moments.

67.     The other three flight attendants said that they were going to inform the pilot.

68.     At this point, it became clear to Plaintiff's father that none of the flight attendants, including the first-class flight attendant to whom Plaintiff's mother initially reported the incident, had informed the pilot.

69.     Instead, the flight attendants waited to tell the pilot until after the male flight attendant had already been aware that Plaintiff's parents suspected him as the person who placed the phone in the bathroom.

70.     Plaintiff's father returned to his seat.

71.     Multiple of the female flight attendants approached Plaintiff's father during the second half of the flight and apologized for what had happened.  They told Plaintiff's father that the male flight attendant would have his baggage searched upon landing.

72.     However, none of the flight attendants or the pilot(s) seized the male flight attendant's phone.

73.     During the approximately one-hour remaining portion of the flight, the male flight attendant had complete, unfettered access to his phone.

74.     In fact, the FBI informed Plaintiff's mother that other flight attendants on the flight reported that, after being confronted by Plaintiff's father, the male flight attendant went into the airplane bathroom, with his phone, for an extended period of time.

**Law Enforcement Intercepts the Flight Upon Landing**

75.     When the flight landed in Boston, the pilot announced that everyone had to stay in their seats because of a security issue.

76.     One of the female flight attendants ushered Plaintiff and her family off the flight

before any of the other passengers.

77.    Waiting for them in the jetway were approximately four to five Massachusetts law enforcement officers, including a detective.

78.    The law enforcement officers asked Plaintiff and her parents what had happened.

79.    Plaintiff and her parents gave the flight attendants the relevant information, and sent them Plaintiff's photograph of the toilet seat.

80.    One of the law enforcement officers asked an American Airlines representative, who was also in the jetway, if there was any circumstance in which a passenger would have access to the red tape that had been used to hold the phone.

81.    The American Airlines representative replied that no, that tape was not accessible to passengers.

82.    The law enforcement officers then removed the male flight attendant from the plane.

83.    Shortly thereafter, the detective approached Plaintiff with a telephone and asked her whether the phone looked like the phone she had seen a portion of, hidden under the tape.

84.    Plaintiff confirmed that the phone did look the same – it was blue and had a case with distinctive scratches or a pattern on it.

85.    From there, the law enforcement officers took the family to the police station at the airport where the family gave the officers more fulsome reports.

86.    At the police station, the family also met with an FBI agent.

### The Flight Attendant Remains Free

87.    As soon as the family returned to Charlotte, Plaintiff's mother contacted the FBI agent to get an update on the status of the investigation.

88.     The FBI agent informed her that law enforcement had not arrested the male flight attendant because, by the time they searched his phone, they could not find any incriminating photo or video on it.

89.     The FBI agent told her that they would be trying to execute search warrants to search the flight attendant's phone more deeply, and to search other pieces of his luggage.

90.     As of the filing of this complaint, Plaintiff has not received any update from law enforcement indicating that those search warrants have been obtained or that anything further has been found.

91.     As of the filing of this complaint, the flight attendant has not been arrested.

92.     Plaintiff does not know whether the flight attendant is still employed by American Airlines, or whether he is still serving passengers on American Airlines flights.

93.     As of the filing of this complaint, Plaintiff and her family have not received any communications whatsoever from American Airlines.

**The Effect of the Incident on Plaintiff**

94.     The incident Plaintiff experienced on her American Airlines flight has left her deeply scarred.

95.     As a direct result of the incident and American Airlines' handling of the incident, Plaintiff has suffered severe negative effects and continues to struggle greatly to this day.

96.     She suffers from symptoms of post-traumatic stress disorder including, but not limited to, depression, irritability, and anxiety.

97.     Plaintiff is jumpy, nervous, and fearful in her interactions with other people.

98.     She is also consistently worried about being in public by herself.  For example, when she runs outside for exercise, she insists on carrying a self-defense ring that has a small blade

inside of it.

99.     Plaintiff also suffers from insomnia and nightmares.

100.    All of these effects have impacted Plaintiff's interpersonal relationships, including her ability to trust adults tasked with ensuring her safety, such as teachers and other authority figures.

101.    Additionally, these effects have impacted Plaintiff's schooling because she has difficulty focusing on school-related tasks.

102.    Furthermore, because the male flight attendant was not promptly arrested, due to American Airlines' failures in that regard, Plaintiff is persistently fearful of him.

103.    She is scared he will try to find her or her family.

104.    She is also extremely anxious about the fact the male flight attendant had access to his phone for an entire hour after the incident and may have distributed any photograph or video of her to other people or uploaded it on the internet.

105.    She is devastated to think that there may be an image or video of her naked body, using a toilet, circulating on the internet.

106.    After the incident, Plaintiff began seeking the professional help of a therapist to guide her through the trauma she is experiencing.

**CLAIMS FOR RELIEF**

107.    The male flight attendant, Doe 1, is indisputably liable for the damage suffered by Plaintiff because: (1) he invaded her privacy; (2) he purposefully filmed her for the purpose of arousing or gratifying sexual desire; and (3) he intentionally inflicted emotional distress on Plaintiff.

108.    American Airlines is also indisputably liable for the damage suffered by Plaintiff

because: (1) it negligently failed to prevent the incident and also negligently failed to take immediate actions after the incident that would minimize its harm to Plaintiff; (2) it negligently hired, supervised, and/or retained Doe 1; and (3) it negligently inflicted emotional distress on Plaintiff.

## FIRST CLAIM FOR RELIEF
### Invasion of Privacy (Against Doe 1)

109.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint as though fully set forth herein.

110.    Plaintiff had a reasonable expectation of privacy while she was using the airplane bathroom.

111.    Doe 1, the male flight attendant, intruded upon Plaintiff's privacy when he placed a phone in the bathroom to film Plaintiff while she was using the toilet.

112.    Doe 1's intrusion was intentional.

113.    Upon information and belief, Doe 1 did in fact film Plaintiff while she was using the toilet in the bathroom, because Plaintiff did not discover the hidden camera until after she had used the toilet.

114.    A reasonable person, under the same or similar circumstances, would be highly offended by such intrusion.

115.    Plaintiff herself was highly offended by the intrusion and invasion of her privacy.

116.    As a direct and proximate cause of Doe 1's actions, Plaintiff has suffered damages in an amount to be proven at trial.

117.    Doe 1's conduct was also malicious, willful, wanton, and done with a reckless disregard for Plaintiff's rights. Plaintiff therefore is entitled to recover punitive damages from Doe 1 pursuant to N.C.G.S. §§ 1D-1, *et seq.*, in an amount to be determined at trial, sufficient to punish

Doe 1 for his wrongful conduct and to deter such conduct in the future by Doe 1 and others similarly situated.

## SECOND CLAIM FOR RELIEF
### Civil Liability for Criminal Act of Secretly Peeping (Against Doe 1)

118.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint as though fully set forth herein.

119.    Doe 1, the male flight attendant, secretly or surreptitiously placed a mobile phone camera in the airplane bathroom for the purposes of filming Plaintiff and viewing Plaintiff's body without her consent.

120.    Upon information and belief, Doe 1 did so for the purpose of arousing or gratifying the sexual desire of himself or another person.

121.    As a direct and proximate cause of Doe 1's actions, Plaintiff has suffered damages in an amount to be proven at trial.

122.    Doe 1's conduct was also malicious, willful, wanton, and done with a reckless disregard for Plaintiff's rights.  Plaintiff therefore is entitled to recover punitive damages from Doe 1 pursuant to N.C.G.S. §§ 1D-1, *et seq.*, in an amount to be determined at trial, sufficient to punish Doe 1 for his wrongful conduct and to deter such conduct in the future by Doe 1 and others similarly situated.  Plaintiff is also entitled to punitive damages against Doe 1 pursuant to N.C.G.S. § 14-202(k).

## THIRD CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress (Against Doe 1)

123.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint as though fully set forth herein.

124.    Doe 1, the male flight attendant, secretly or surreptitiously placed a mobile phone

camera in the airplane bathroom for the purposes of filming Plaintiff and viewing Plaintiff's body without her consent.

125.   Doe 1's conduct was extreme and outrageous.

126.   Doe 1's conduct was intended to cause, or recklessly indifferent to the likelihood it would cause, severe emotional distress to Plaintiff.

127.   Doe 1's conduct did cause severe emotional distress to Plaintiff.  That emotional distress includes, but is not limited to, the following:

    a.   She suffers from symptoms of post-traumatic stress disorder including, but not limited to, depression, irritability, and anxiety.

    b.   She is jumpy, nervous, and fearful in her interactions with other people.

    c.   She is also consistently worried about being in public by herself.  For example, when she runs outside for exercise, she insists on carrying a self-defense ring that has a small blade inside of it.

    d.   She also suffers from insomnia and nightmares.

    e.   All of these effects have impacted Plaintiff's interpersonal relationships, including her ability to trust adults tasked with ensuring her safety, such as teachers and other authority figures.

    f.   Additionally, these effects have impacted Plaintiff's schooling because she has difficulty focusing on school-related tasks.

    g.   Furthermore, because the male flight attendant was not promptly arrested, due to American Airlines' failures in that regard, Plaintiff is persistently fearful of him.

    h.   She is scared he will try to find her or her family.

    i.   She is also extremely anxious about the fact the male flight attendant had access to his phone for an entire hour after the incident and may have distributed any photograph or video of her to other people or uploaded it on the internet.

    j.   She is devastated to think that there may be an image or video of her naked body, using a toilet, circulating on the internet.

128.    As a direct and proximate cause of Doe 1's actions, Plaintiff has suffered damages in an amount to be proven at trial.

129.    Doe 1's conduct was also malicious, willful, wanton, and done with a reckless disregard for Plaintiff's rights.  Plaintiff therefore is entitled to recover punitive damages from Doe 1 pursuant to N.C.G.S. §§ 1D-1, *et seq.*, in an amount to be determined at trial, sufficient to punish Doe 1 for his wrongful conduct and to deter such conduct in the future by Doe 1 and others similarly situated.

## FOURTH CLAIM FOR RELIEF
### Negligence (Against Defendant American Airlines)

130.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint as though fully set forth herein.

131.    American Airlines owed to Plaintiff the legal duty to exercise the highest degree of care to avoid injuring a passenger during flight.

132.    This duty required that American Airlines and its employees exercised the greatest degree of care and foresight possible to ensure Plaintiff's safe conveyance.

133.    American Airlines breached that duty in multiple ways.

134.    First, American Airlines breached that duty when it failed to confiscate the male flight attendant's phone for the second half of the flight, which has impeded the criminal case against him.

a. After hearing reports from both Plaintiff's mother and Plaintiff's father, American Airlines employees, including the three other flight attendants and/or the pilot(s), knew or should have known that the male flight attendant was the person who placed the phone in the bathroom.

b. The other flight attendants and/or pilot(s) were confident enough that the male flight attendant was the one who placed the phone in the bathroom that they asked law enforcement to meet the plane upon landing, and identified the male flight attendant as the person who should be removed from the flight and questioned by law enforcement.

c. Yet despite this knowledge, the other flight attendants and/or pilot(s) allowed the male flight attendant to have complete and unfettered access to his cell phone for approximately one hour after the incident and prior to the plane landing in Boston.

d. During this time, the male flight attendant went into the airplane bathroom for a considerably long period of time.

e. Upon landing, law enforcement was unable to find an incriminating image or video on the male flight attendant's phone.

f. Upon information and belief, the male flight attendant had ample time to delete or hide on his phone, any and all incriminating images or videos on his phone during that second half of the flight, when he had complete access to his phone.

g. Law enforcement's inability to immediately find an incriminating image or video on his phone has impeded the criminal investigation of the male flight attendant.

h.  Law enforcement's inability to immediately find an incriminating image or video on his phone prohibited law enforcement from promptly arresting the male flight attendant and allowed him to remain free.

i.  Upon information and belief, law enforcement's inability to immediately find an incriminating image or video on his phone has allowed the male flight attendant ample time to delete incriminating photos and videos from other electronic devices he owns and/or to delete other incriminating evidence that could be used against him.

135.  Second, American Airlines breached its duty when it failed to confiscate the male flight attendant's phone for the second half of the flight, which gave him the opportunity to disseminate any photo or video he took of Plaintiff.

a.  After hearing reports from both Plaintiff's mother and Plaintiff's father, American Airlines employees, including the three other flight attendants and/or the pilot(s), knew or should have known that the male flight attendant was the person who placed the phone in the bathroom.

b.  The other flight attendants and/or pilot(s) were confident enough that the male flight attendant was the one who placed the phone in the bathroom that they asked law enforcement to meet the plane upon landing, and identified the male flight attendant as the person who should be removed from the flight and questioned by law enforcement.

c.  Yet despite this knowledge, the other flight attendants and/or pilot(s) allowed the male flight attendant to have complete and unfettered access to his cell phone for approximately one hour after the incident and prior to the plane

landing in Boston.

    d.   During this time, the male flight attendant went into the airplane bathroom for a considerably long period of time.

    e.   The amount of during which the male flight attendant had his phone would have allowed sufficient opportunity for him to disseminate to other people or websites any photos or videos he took of Plaintiff.

    f.   Upon information and belief, the male flight attendant may have texted or emailed any photos or videos to other people.

    g.   Upon information and belief, the male flight attendant may have uploaded any photos or videos to the internet.

136.   Third, American Airlines breached its duty because the first-class flight attendant knew or should have known that Doe 1, the male flight attendant, was engaged in improper behavior.

    a.   The first-class cabin on flight 1441 was small with only a handful of seats.

    b.   As the flight attendant assigned to that cabin, the first-class flight attendant should have noticed that unusual and suspicious way in which the male flight attendant was behaving.

    c.   The first-class flight attendant knew or should have known that the male flight attendant was instructing Plaintiff to use a bathroom that was not in her flight cabin, guided her to that bathroom, went into the bathroom before her, said out loud that the toilet seat was broken (when the first-class flight attendant knew it was not broken), and waited outside the bathroom for her while Plaintiff was using the bathroom.

137.    American Airlines' breaches of its duty to Plaintiff were an actual and proximate cause of the injury Plaintiff suffered.

138.    As a direct and proximate cause of American Airlines' breaches, Plaintiff has suffered damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Negligent Hiring, Supervision, or Retention (Against Defendant American Airlines)**

139.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint as though fully set forth herein.

140.    American Airlines owed to Plaintiff the legal duty to exercise the highest degree of care to avoid injuring a passenger during flight.

141.    This duty required that American Airlines and its employees exercised the greatest degree of care and foresight possible to ensure Plaintiff's safe conveyance.

142.    American Airlines was required to use reasonable care in hiring, supervising, and retaining employees who are competent and fitted for the work in which they are engaged.

143.    Doe 1, the male flight attendant, was not competent or fitted for being a flight attendant because he placed a hidden mobile phone in an airplane bathroom to secretly film Plaintiff using the toilet.

144.    Upon information and belief, American Airlines knew or should have known that Doe 1 was unfit for any employment position at American Airlines.

145.    Upon information and belief, multiple American Airlines employees knew or should have known that Doe 1 engaged in inappropriate, sexual conduct prior to his filming of Plaintiff.

146.    Upon information and belief, American Airlines knew or should have known that multiple American Airlines employees had complained about Doe 1's inappropriate, sexual

conduct prior to his filming of Plaintiff.

147.    Upon information and belief, American Airlines knew or should have known that U.S. Customs and Border Protection had stopped Doe 1 for possession of inappropriate material and/or for inappropriate, sexual conduct prior to his filming of Plaintiff.

148.    Upon information and belief, American Airlines negligently supervised Doe 1 by, among other things, failing to adequately investigate reports of his inappropriate behavior, failing to report that behavior to law enforcement if appropriate, and failing to take appropriate steps to increase supervision and observation of Doe 1 upon becoming aware of his inappropriate behavior.

149.    Upon information and belief, American Airlines negligently retained Doe 1 by allowing him to continue to remain his position of employment well after the time when American Airlines knew or should have known of Doe 1's inappropriate behavior.

150.    Upon information and belief, American Airlines' negligent supervision and retention of Doe 1 allowed him to the opportunity to secretly film Plaintiff while she used the airplane bathroom and was therefore a substantial factor in causing harm to Plaintiff.

151.    As a direct and proximate cause of American Airlines' actions and inactions, Plaintiff has suffered damages in an amount to be proven at trial.

<u>SIXTH CLAIM FOR RELIEF</u>
**Negligent Infliction of Emotional Distress (Against Defendant American Airlines)**

152.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint as though fully set forth herein.

153.    As set forth throughout this Complaint, American Airlines was negligent in its handling of the incident, in failing to prevent the incident, in its supervision of Doe 1, and in its retention of Doe 1.

154.    Plaintiff suffered severe emotional distress as a result of American Airlines'

negligence.  That emotional distress includes but is not limited to the following:

    a.  She suffers from symptoms of post-traumatic stress disorder including, but not limited to, depression, irritability, and anxiety.

    b.  She is jumpy, nervous, and fearful in her interactions with other people.

    c.  She is also consistently worried about being in public by herself.  For example, when she runs outside for exercise, she insists on carrying a self-defense ring that has a small blade inside of it.

    d.  She also suffers from insomnia and nightmares.

    e.  All of these effects have impacted Plaintiff's interpersonal relationships, including her ability to trust adults tasked with ensuring her safety, such as teachers and other authority figures.

    f.  Additionally, these effects have impacted Plaintiff's schooling because she has difficulty focusing on school-related tasks.

    g.  Furthermore, because the male flight attendant was not promptly arrested, due to American Airlines' failures in that regard, Plaintiff is persistently fearful of him.

    h.  She is scared he will try to find her or her family.

    i.  She is also extremely anxious about the fact the male flight attendant had access to his phone for an entire hour after the incident and may have distributed any photograph or video of her to other people or uploaded it on the internet.

    j.  She is devastated to think that there may be an image or video of her naked body, using a toilet, circulating on the internet.

155.   American Airlines' negligence was a proximate cause of Plaintiff's severe

emotional distress.

156.    As a direct and proximate cause of American Airlines' negligence, Plaintiff has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for the following relief against Defendants:

1.    For monetary damages according to proof;

2.    For pre- and post-judgment interest on money damages allowed by law;

3.    For costs of suit herein, including attorneys' fees, to the maximum extent allowed by law; and

4.    For punitive damages against Doe 1, pursuant to N.C.G.S. §§ 1D-1, *et seq.* and N.C.G.S. § 14-202(k);

5.    That the Court tax the costs of this action against Defendants;

6.    That all issues triable by jury be so tried; and

7.    For all other relief, both legal and equitable, which the Court deems just and proper.

[SIGNATURES ON THE FOLLOWING PAGE]

This the 1st day of December, 2023.

                              **JAMES, McELROY & DIEHL, P.A.**

                              ___s/ John R. Buric_____
                              John R. Buric, N.C. State Bar No. 22688
                              John R. Brickley, N.C. State Bar No. 41126
                              525 N. Tryon Street, Suite 700
                              Charlotte, North Carolina 28202
                              Telephone: (704) 372-9870
                              Facsimile: (704) 333-5508
                              Email: jburic@jmdlaw.com
                                      jbrickley@jmdlaw.com
                              *Counsel for Plaintiff Jane Doe*


                              **LEWIS & LLEWELLYN LLP**

                              ___s/ Paul T. Llewellyn_____
                              Paul T. Llewellyn, CA State Bar No. 216887
                              *Pending Pro Hac Vice Admission*
                              Erin H. Reding, CA State Bar No. 252691
                              *Pending Pro Hac Vice Admission*
                              601 Montgomery Street, Suite 2000
                              San Francisco, California 94111
                              Telephone: (415) 800-0590
                              Facsimile: (415) 390-2127
                              Email: pllewellyn@lewisllewellyn.com
                                      ereding@lewisllewellyn.com
                              *Counsel for Plaintiff Jane Doe*